## LANIER *et al. v.* REGISTER.

1. Where a grantor conveyed to his daughter certain described land, and provided in the deed that "the maker in this deed . . is to have the rents, issues, and all profits and the possession of said land, and to have the right to use the timber for and during his natural life, and at his death the title to the land above described is to vest in his daughter, . . in fee simple," only a life-estate was reserved to the grantor in and to the timber on the land; and where the grantor leased the timber for turpentine purposes for a period of time which extended beyond the life of the life-tenant, said lease is inoperative after the death of the life-tenant.

2. The trial judge erred in refusing a temporary injunction to enjoin the turpentining of the timber on the land in controversy by the lessee of the life-tenant.

No. 5379. NOVEMBER 20, 1926.

Petition for injunction. Before Judge Hardeman. Candler superior court. March 16, 1926.

*W. H. Lanier,* for plaintiffs.

*Kirkland & Kirkland,* for defendant.

HILL, J. The present case was tried upon an agreed statement of facts, in substance as follows: J. I. Warren was the father of Eunice Pearl Warren. On September 19, 1917, he executed and delivered to her a certain deed which was duly recorded on the same date. On October 5, 1917, Eunice Pearl Warren married Rufus Lanier, and to them one child was born, Eunice Lanier. On July 11, 1918, Eunice Pearl Warren, the wife of Rufus Lanier, died; the estate of Eunice Pearl Lanier was never administered upon. On October 5, 1925, J. I. Warren executed and delivered to E. J. Register & Co. a turpentine lease to the timber upon the same land described in the deed from J. I. Warren to Eunice Pearl Warren, which lease was recorded December 28, 1925. On December 17, 1925, J. I. Warren died, and George M. Byrd, who was then in possession of the land, having purchased the life-estate of J. I. Warren in said land, vacated, and Rufus Lanier and his child, Eunice Lanier, took possession of the land, and H. Lanier moved upon the place, taking with him Eunice Lanier, and H. Lanier is still in possession as tenant of Rufus Lanier and Eunice Lanier, and is proceeding to cultivate the cleared lands upon the

Deeds, 18 C. J. p. 252, n. 30; p. 253, n. 35.
Estates, 21 C. J. p. 963, n. 98.
Logs and Logging, 38 C. J. p. 149, n. 86; p. 240, n. 21 New.

place.  On March 5, 1926, E. J. Register sent hands under his overseer, H. C. Register, and proceeded to hang turpentine cups on the trees thereon and put one streak with hacks above each of the cups so hung.  H. Lanier stated to E. J. Register that Rufus Lanier objected to the timber being cupped, and E. J. Register continued with the cupping until all of the timber was cupped.  On March 6, 1926, a restraining order was served upon E. J. Register.  Rufus Lanier and Eunice Lanier claim the timber upon the land by reason of the deed from J. I. Warren to Eunice Pearl Warren, who became Mrs. Rufus Lanier, and as the lawful heirs of Mrs. Rufus Lanier.  E. J. Register claims the right to work the timber under the lease from J. I. Warren.  On the hearing the court refused to grant a temporary injunction in behalf of the plaintiffs who had filed a petition to enjoin the defendant, as lessee of the life-tenant, from cutting, cupping, or otherwise working the timber on the land in controversy for turpentine purposes; and to this judgment the plaintiffs excepted.  The sole question in this case is, did the life-tenant, J. I. Warren, have the right to lease the timber for turpentine purposes for a greater length of time than the life of the life-tenant?  In other words, did the rights of the life-tenant terminate, at his death, in the tract of land in controversy?  In the deed from J. I. Warren to his daughter, Mrs. Rufus Lanier, the following recital occurs: "The maker in this deed, the said J. I. Warren, is to have the rents, issues, and all profits and the possession of said land, and to have the right to use the timber for and during his natural life, and at his death the title to the land above described is to vest in his daughter, the said Eunice Pearl Warren, in fee simple."

This case was tried upon the assumption that the instrument in question was a deed, and not a will; and we so treat it here.  In *Collier* v. *Carter,* 146 *Ga.* 476, 477 (91 S. E. 551, 11 A. L. R. 1), this court held that "Where an instrument in the form of and attested as a deed contains a clause that it is 'to go into effect at the' signer's death, and where there is no other indication as to the intention of the signer, and the paper is duly delivered, it will be construed to be a deed postponing possession."  And see cases cited.  The learned trial judge in the court below held that the above-recited language in the deed from Warren to his daughter authorized the grantor to afterwards lease the timber for tur-

pentine purposes for a term of years extending beyond the life of the grantor, and that such lessee, who was chargeable with notice of the previous conveyance because the deed was duly recorded, would have the right under such lease, after the death of the life-tenant and lessor, to enter upon the land and to box the timber for turpentine purposes for the full term of the lease, which was four years. We are of the opinion that the trial judge erred in so holding. The cardinal rule of construction is to ascertain the intention of the parties. Civil Code (1910), § 4266. Applying this rule to the facts of the present case, we are of the opinion that when the grantor used the language "J. I. Warren is to have the right to use the timber for and during his natural life," it was the intention of the grantor and grantee that the life-tenant should not have any interest in the timber after the termination of the life-estate, and that the remainderman should have the right to the possession and title to the property at the death of the life-tenant. It follows, therefore, that if the life-tenant executed a lease authorizing the boxing of the timber in question for a period of time which extended beyond the death of the life-tenant, such lease would be inoperative after that time. This case is different in its facts from the case of *Simpson* v. *Powell*, 158 *Ga.* 516 (123 S. E. 741), cited by the defendant. In that case the grantor reserved for himself a life interest in the property "and the further right to sell and dispose of, in any manner, any or all of the timber on the lands conveyed therein." It is also distinguishable from the case of *Cannon* v. *Laing*, 153 *Ga.* 88 (111 S. E. 565), where the testator nominated his wife as executrix, and bequeathed to her the residue of his real and personal estate during her life, "to be used as she thinks proper," with power to dispose of any property thereon "as she thinks to the best interest of the estate and to maintain herself, and at her death whatever may be left by her shall be equally divided between" the testator's heirs, etc. While we find no case involving the construction of a deed with language identical with that used in the deed in the present case, yet we are clear in the view, under the facts of this case, that the grantor in the deed, who was also a life-tenant, could not execute a lease which would extend beyond the term of his natural life.

*Judgment reversed. All the Justices concur.*